**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

MONEYWELL GRP LLC,

*PLAINTIFF,*

-AGAINST-                                    Civil Action No. 1:25-cv-00274

TITAN TRUCKING LLC, STANDARD
WASTE SERVICES, TESI INC, SENIOR
TRUCKING LLC, TITAN
ENVIROMENTAL SOLUTIONS,
and JEFFERY JOHN RIZZO,

*DEFENDANT(S).*
-------------------------------------------------------------X

## DEFENDANTS ANSWER TO PLAINTIFF'S COMPLAINT
## AND AFFIRMATIVE DEFENSES

Defendants Titan Trucking LLC, Standard Waste Services, Tesi Inc, Senior Trucking

LLC, Titan Environmental Solutions, and Jeffery John Rizzo by and through their attorneys

White and Williams LLP, hereby answer the Plaintiff's Complaint as follows:

1. Plaintiff, MONEYWELL GRP LLC, is an entity organized under the laws of the United

States of America. Plaintiff is an entity authorized to do business in the State of New

York.

**RESPONSE: Admitted.**

2. Upon information and belief, at all relevant times Company Defendants TITAN

TRUCKING LLC, STANDARD WASTE SERVICES, TESI INC, SENIOR

TRUCKING LLC, and TITAN ENVIROMENTAL SOLUTIONS (collectively,

hereinafter "Company Defendant") were and are companies organized and existing under

the laws of Michigan.

**RESPONSE: Admitted.**

3.     Upon information and belief, at all relevant times, Defendant Guarantor JEFFREY JOHN RIZZO (hereinafter "Defendant Guarantor") was and is an individual residing in the State of Michigan. "Defendants" shall include Company Defendant and Defendant Guarantor.

**RESPONSE:  Admitted in part. Denied in Part. It is admitted that Defendant Jeffery John Rizzo is an individual residing in the State of Michigan. It is specifically denied that Defendant Jeffery John Rizzo is the Guarantor. On the contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

## VENUE

4.     Venue is proper in this breach of contract claim, pursuant to the subject contract which contains a clause specifying that New York is the exclusive jurisdiction for all disputes arising under the contract.

**RESPONSE:  Admitted.**

## THE FACTS

5.     On or about January 22, 2025, Plaintiff and Company Defendant entered into a Sale Of Future Receipts Agreement (hereinafter the "Agreement") whereby Plaintiff agreed to purchase all rights of Company Defendant's future receivables having an agreed upon value of $179,880.00. The purchase price for said receivables was $120,000.00.

**RESPONSE:  It is admitted that the parties entered into an agreement on or about January 22, 2025. It is specifically denied that the agreement involved future receivables. On the Contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

6.     In addition, Defendant Guarantor personally guaranteed any and all amounts owed to Plaintiff from Company Defendant, upon a breach in performance by Company Defendant.

**RESPONSE:  Denied. It is specifically denied that Defendant Jeffery John Rizzo is the Guarantor. On the contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

34778895v.1

7. Pursuant to the Agreement, Company Defendant agreed to have one bank account approved by Plaintiff from which Company Defendant authorized Plaintiff to make daily ACH withdrawals until the $179,880.00 was fully paid to Plaintiff.

**RESPONSE: Denied. The parties agreed to repayment of the loan through pre-negotiated fixed payments over a fixed period of time and that Plaintiff would debit those payments until the loan amount was paid in full. Defendants made loan payments. On the contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

8. Plaintiff remitted the purchase price for the future receivables to Company Defendant as agreed.

**RESPONSE: Denied. The allegations contained in paragraph 8 constitute legal conclusions to which no response is required. It is admitted that the parties entered into an agreement on or about January 22, 2025. It is specifically denied that the agreement involved future receivables. On the Contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

9. Initially, Company Defendant met its obligation under the Agreement, however, on or about February 13, 2025, Company Defendant breached the Agreement by failing to perform its obligations under the terms of the Agreement, by blocking and depriving Plaintiff of its daily ACH withdrawals from the specified bank account all while still conducting regular business operations. Company Defendant has paid a total of $32,378.00 to Plaintiff leaving a balance due and owing the amount of $147,502.00.

**RESPONSE: Denied. The parties agreed to repayment of the loan through pre-negotiated fixed payments over a fixed period of time and that Plaintiff would debit those payments until the loan amount was paid in full. Defendants made loan payments. It is specifically denied that the agreement involved the purchase of future receivables. On the contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

10. In addition, pursuant to Appendix B of the Agreement, Company Defendant incurred a default fee in the amount of $48,675.66 (which, upon the occurrence of an event of default, is calculated as thirty-three percent (33%) of the remaining balance of the purchased amount of future receivables to be applied to the balance owed to Plaintiff) for

Company Defendant's failure to direct the agreed upon payment(s) to Plaintiff and for Company Defendant changing its bank account from the specified bank account.

**RESPONSE: Denied. The parties agreed to repayment of the loan through pre-negotiated fixed payments over a fixed period of time and that Plaintiff would debit those payments until the loan amount was paid in full. Defendants made loan payments. It is specifically denied that the agreement involved the purchase of future receivables. On the contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

11.    Despite due demand, Company Defendant has failed to pay the amounts due and owing by Company Defendant to Plaintiff under the Agreement.

**RESPONSE: Denied. The parties agreed to repayment of the loan through pre-negotiated fixed payments over a fixed period of time and that Plaintiff would debit those payments until the loan amount was paid in full. Defendants made loan payments. It is specifically denied that the agreement involved the purchase of future receivables. On the contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

12.    Additionally, Defendant Guarantor are responsible for all amounts incurred as a result of any default of the Company Defendant.

**RESPONSE: Denied. It is specifically denied that Defendant Jeffery John Rizzo is the Guarantor. On the contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

13.    There remains a balance due and owing to Plaintiff on the Agreement in the amount of $196,177.66, plus interest from February 13, 2025, costs, disbursements and attorney's fees.

**RESPONSE: Denied. The allegations contained in paragraph 13 constitute legal conclusions to which no response is required. To the extent a response is required, answering defendants deny those allegations. It is admitted that the parties entered into an agreement on or about January 22, 2025. It is specifically denied that the agreement involved future receivables. On the Contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

<u>**FOR A FIRST CAUSE OF ACTION: BREACH OF CONTRACT**</u>

14. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 13 of this complaint as though fully set forth at length herein.

**RESPONSE: Defendants repeat and reinterate each and every response contained in paragraphs 1 through 13 of this answer as though fully set forth at length herein.**

15. Plaintiff gave fair consideration to Company Defendant which was tendered for the right to receive the aforementioned receivables. Accordingly, Plaintiff fully performed under the Agreement.

**RESPONSE: Denied. The allegations contained in paragraph 15 constitute legal conclusions to which no response is required. To the extent a response is required, answering defendants deny those allegations. It is admitted that the parties entered into an agreement on or about January 22, 2025. It is specifically denied that the agreement involved future receivables. On the Contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

16. Upon information and belief, Company Defendant is still conducting regular business operations and still collecting receivables.

**RESPONSE: Admitted.**

17. Company Defendant has materially breached the Agreement by failing to divert the specified payment amount to Plaintiff as required under the Agreement.

**RESPONSE: Denied. The parties agreed to repayment of the loan through pre-negotiated fixed payments over a fixed period of time and that Plaintiff would debit those payments until the loan amount was paid in full. Defendants made loan payments. It is specifically denied that the agreement involved the purchase of future receivables. On the contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

18. Upon information and belief, Company Defendant has also materially breached the Agreement by using more than one depositing bank account which has not been approved by Plaintiff.

**RESPONSE: Denied. The parties agreed to repayment of the loan through pre-negotiated fixed payments over a fixed period of time and that Plaintiff would debit those payments until the loan amount was paid in full. Defendants made loan payments. It is specifically**

34778895v.1

**denied that the agreement involved the purchase of future receivables. On the contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

19. By reason of the foregoing, Plaintiff has suffered damages and is entitled to judgment against Company Defendant based on Company Defendant's breach of contract in the amount of $196,177.66, plus interest from February 13, 2025, costs, disbursements and attorney's fees.

**RESPONSE: Denied. The allegations contained in paragraph 19 constitute legal conclusions to which no response is required. To the extent a response is required, answering defendants deny those allegations. It is admitted that the parties entered into an agreement on or about January 22, 2025. It is specifically denied that the agreement involved future receivables. On the Contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

### FOR A SECOND CAUSE OF ACTION: PERSONAL GUARANTEE

20. Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 19 of this complaint as though fully set forth at length herein.

**RESPONSE: Defendants repeat and reinterate each and every response contained in paragraphs 1 through 19 of this answer as though fully set forth at length herein.**

21. Pursuant to the Agreement, Defendant Guarantor personally guaranteed that Company Defendant would perform its obligations thereunder and that he or she would be personally liable for any loss suffered by Plaintiff as a result of certain breaches by Company Defendant.

**RESPONSE: Denied. It is specifically denied that Defendant Jeffery John Rizzo is the Guarantor. On the contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

22. Company Defendant has breached the Agreement by failing to pay its obligations to Plaintiff.

**RESPONSE: Denied. The parties agreed to repayment of the loan through pre-negotiated fixed payments over a fixed period of time and that Plaintiff would debit those payments until the loan amount was paid in full. Defendants made loan payments. It is specifically**

**denied that the agreement involved the purchase of future receivables. On the contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

23.     By reason of the foregoing, Plaintiff is entitled to judgment against Defendant Guarantor based on his or her personal guarantee in the sum of $196,177.66, plus interest from February 13, 2025, costs, disbursements and attorney's fees.

**RESPONSE: Denied. It is specifically denied that Defendant Jeffery John Rizzo is the Guarantor. On the contrary, the agreement is a disguised criminally usurious loan and is void as a matter of law.**

WHEREFORE, Defendants Titan Trucking LLC, Standard Waste Services, Tesi Inc, Senior Trucking, LLC, Titan Environmental Solutions, and Jeffey John Rizzo demand judgment dismissing Plaintiff's Complaint, together with costs, expenses, disbursements, and attorney's fees incurred in the defense of this action, and such other and further relief as this Court deems just and proper.

**AFFIRMATIVE DEFENSES**

Answering defendants assert the following affirmative defenses and reserve the right to assert others that may emerge as the case proceeds:

1.      Plaintiff's sham form of MCA agreements (the "MCA Agreements"), including the one entered into by Defendant, are unconscionable contracts of adhesion that are not negotiated at arms-length.

2.      Instead, they contain one-sided terms that prey upon the desperation of the small business and their individual owners and help conceal the fact that the transactions, including the one involving Plaintiffs, are really loans.

3.      Among these one-sided terms, the MCA Agreements include: (1) a venue and choice-of-law provision requiring the merchant to litigate in a foreign jurisdiction under the laws of a foreign jurisdiction, (2) a personal guarantee, the revocation of which

-7-

is an event of default, (3) a jury trial waiver, (4) a class action waiver, (5) a collateral and security agreement providing a UCC lien over all of the merchant's assets, (6) a prohibition of obtaining financing from other sources, (7) the maintenance of business interruption insurance, (8) an assignment of lease of merchant's premises in favor of the MCA company, (9) the right to direct all credit card processing payments to the MCA company, (10) a power-of-attorney "to take any and all action necessary to direct such new or additional credit card processor to make payment to [Plaintiff]," and (11) a power of attorney authorizing the MCA company "to take any action or execute any instrument or document to settle all obligations due…."

4. Plaintiff uses a sham reconciliation provision to disguise the loans.

5. In order to evade state usury laws, Plaintiff includes a sham reconciliation provision in the MCA Agreements to give the appearance that the loans do not have a definite term.

6. Under a legitimate reconciliation provision, if a merchant pays more through its fixed daily payments than it actually received in receivables, the merchant is entitled to seek the repayment of any excess money paid. Thus, if sales decrease, so do the payments.

7. For example, if an MCA company purchased 25% of the merchant's receivables, and the merchant generated $100,000 in receivables for the month, the most that the MCA company is entitled to keep is $25,000. Thus, if the merchant paid $40,000 through its daily payments, then the merchant is entitled to $15,000 back under the sham reconciliation provision.

34778895v.1

8. In order to ensure that a merchant can never use their sham reconciliation provision, however, Plaintiff falsely represents that the fixed daily payment amount is a good-faith estimate of the percentage of receivables purchased. By doing so, Plaintiff ensures that if sales decrease, the required fixed daily payments remain the same.

9. For example, if 25% of a merchant's actual monthly receivables would result in a daily payment of $1,000, Plaintiff falsely states that the good-faith estimate is only $500 per day so that if sales did in fact decrease by 50%, the merchant would not be able to invoke the reconciliation provision.

10. On information and belief, Plaintiff does not have a reconciliation department, does not perform reconciliations, and has never refunded a merchant money as required under their sham reconciliation provision.

11. In fact, Plaintiff's MCA Agreements specifically require Plaintiff MCA companies to affirmatively reconcile the accounts each month but never do.

12. Plaintiff also intentionally disguised the true nature of its transactions.

13. Despite their documented form, the transactions are, in economic reality, loans that are absolutely repayable. Among other hallmarks of a loan:

   i. The daily payments required by the MCA Agreements were fixed and the so-called reconciliation provision was mere subterfuge to avoid this state's usury laws. Rather, just like any other loan, the purchased amount was to be repaid within a specified time;
   ii. The default and remedy provisions purported to hold the merchants absolutely liable for repayment of the purchased amount. The loans sought to obligate the merchants to ensure sufficient funds were maintained in a designated account to make the daily payments and, after a certain number of instances of insufficient funds being maintained in the account, the merchants were in default and, upon default, the outstanding balance of the purchased amount became immediately due and owing;
   iii. While the MCA Agreements purported to "assign" all of the merchant's future account receivables to Plaintiff until the purchased amount was paid, the merchants retained all the indicia and benefits of ownership of the account receivables

34778895v.1

including the right to collect, possess and use the proceeds thereof. Indeed, rather than purchasing receivables, Plaintiff merely acquired a security interest in the merchant's accounts to secure payment of the purchased amount;

iv. Unlike true receivable purchase transactions, Plaintiff Transactions were underwritten based upon an assessment of the merchant's credit worthiness; not the creditworthiness of any account debtor;

v. The purchased amount was not calculated based upon the fair market value of the merchant's future receivables, but rather was unilaterally dictated by Plaintiff based upon the interest rate it wanted to be paid. Indeed, as part of the underwriting process, Plaintiff did not request any information concerning the merchant's account debtors upon which to make a fair market determination of their value;

vi. The amount of the daily payments was determined based upon when Plaintiff wanted to be paid, and not based upon any good-faith estimate of the merchant's future account receivables;

vii. Plaintiff assumed no risk of loss due to the merchant's failure to generate sufficient receivables because the failure to maintain sufficient funds in the Account constituted a default under the agreements;

viii. Plaintiff required that the merchants to undertake certain affirmative obligations and make certain representations and warranties that were aimed at ensuring the company would continue to operate and generate receivables and a breach of such obligations, representations and warranties constituted a default, which fully protected Plaintiff from any risk of loss resulting from the merchant's failure to generate and collect receivables.

### **AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred as they arise out of fraudulent activity.

### **AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred under the N.Y. Penal Law §190.40.

### **AS AND FOR A THIRD AFFIRMATIVE DEFENSE**

The Agreement is unenforceable on the grounds of unconscionability because, among other things and without limitation, Plaintiff knowingly preyed upon a financially distressed company, the Agreement charges a usurious rate of interest, and conceals the true nature of the transaction. Moreover, the purported reconciliation provision contained in the contract is illusory and intentionally inserted by Plaintiff to further conceal the true nature of the transaction.

34778895v.1

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred as they arise out of an illegal and unconscionable contract. *See Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 2021 N.Y. LEXIS 2577, \*45, 2021 NY Slip Op 07055, 11, 2021 WL 5926893 (N.Y. Dec. 16, 2021) ("Although the GTR and CMS agreements are described as "factoring" agreements, they do not bear several of the hallmarks of traditional factoring arrangements, in that FutureNet did not sell any identifiable receivable to GTR or CMS; GTR and CMS did not collect any receivables; GTR and CMS received fixed daily withdrawals from FutureNet's bank account regardless of whether or how much FutureNet collected from or billed to its clients; and GTR and CMS did not bear the risk of nonpayment by any specific customer of FutureNet. The arrangements FutureNet entered with GTR and CMS appear less like factoring agreements and more like high-interest loans that might trigger usury concerns (*see Adar Bays, LLC v GeneSYS ID*, — NE3d —, 2021 NY Slip Op 05616 [2021]).").

Plaintiff calculated the Purchase Price and Purchased Amount based on the principal amount loaned and the principal and interest to be repaid. The use of these terms was unilaterally dictated by Plaintiffs and was intended to disguise the true nature of the transaction. Further the Initial Estimated Payment was unilaterally dictated by Plaintiff based on the term in which it intended to be repaid. The intended interest rate was in excess of the rate allowed by New York Law and is criminally usurious and unconscionable on its face.

34778895v.1

April 4, 2025

**WHITE AND WILLIAMS LLP**

By: _____

Shane R. Heskin
810 Seventh Avenue, Suite 500
New York, New York 10019
(215) 864-6329
heskins@whiteandwilliams.com
*Attorneys for Defendants*